## In re Anonymous Nos. 53 and 54 D.B. 90

Disciplinary Board Docket nos. 53 and 54 D.B. 90.

Report of Hearing Committee no. [  ]
Hearing Committee, April 10, 1991—

### FINDINGS OF FACT

(1) Respondents were record owners of [   ], a six-unit apartment building.

(2) Respondents had a business partner, [A], who had a one-third equitable interest in the property.

(3) The partnership of respondents and Mr. [A] was called [B] Associates.

(4) In July 1988, [B] listed the property at [   ] Street for sale with [C], President of [C] Real Estate Inc.

(5) Subsequently, an agreement of sale was entered between [B] and [D] and [E], his daughter.

(6) There was no attorney-client relationship between the respondents and [D] and [E].

(7) Settlement took place on November 30, 1988.

(8) Prior to settlement, a dispute arose concerning repairs to the property.

(9) As a result of the dispute concerning repairs, the sellers and the real estate broker agreed at settlement to give the buyers an additional credit of $4,375.

(10) All discussions regarding the repairs were between [C] on the one hand and [D] and [E] on the other hand. Respondents never met [D] and [E] until the day of settlement.

(11) The settlement was "acrimonious."

(12) As of the date of settlement, tenants had not been advised of the transfer of title from [B] to [D] and [E].

(13) At settlement, respondents were acting only as owners of property and not as lawyers. They were represented at the settlement by [C] and a co-agent.

(14) [D] and [E] were represented at settlement by their own counsel, [F], Esq.

(15) Although it is normal for the buyer to prepare notices regarding a sale for the tenants, as of the date of settlement, the tenants had not been advised of the transfer of title from [B] to [D] and [E] because [D] and [E] had not prepared the notices.

(16) [E] notified the tenants that the rents should be paid to her by placing notices on their apartment doors on December 1, 1988.

(17) A written notice was sent to the tenants by [B] on December 12, 1988.

(18) In mid-December 1988, [E] notified Ms. [C] that she had not received three rental payments for December 1988 and that she believed that the payments had been sent to the sellers.

(19) Shortly after hearing from [E], Ms. [C] contacted respondent [1].

(20) On or about December 12, 1988, respondent [1] telephoned Mr. [A], who informed him that two rent checks had been received.

(21) [Respondent 1] told Mr. [A] to "send a check payable to her ([E]) for those two checks."

(22) As a result of the conversation, on December 14, 1988, Mr. [A] prepared a check payable to [E] in the amount of $745, and forwarded it to respondent [1] with a note advising him that: "Enclosed check covers the December rents for Apt. 1F ($395) and Apt. 3R ($350), which I received earlier this month. To date, I have not received any other December rent checks."

(23) On or about December 13, 1988, before he received Mr. [A's] note and check dated December 14, respondent [1] received a telephone call from [E].

(24) Respondent [1] contends that [E] was "arrogant" and accused him of being "dishonest."

(25) [Respondent] told [E] "We only have two checks . . . provide me with verification that [we] have three checks, and I'll be happy to pay you the money."

(26) When he received Mr. [A's] note and check dated December 14, 1988, respondent [1] did not forward the check to [D], because he knew there was a dispute with regard to how many checks had been received and how much money was owed.

(27) On January 13, 1989, [D] and [E] filed suit in the Municipal Court of [   ] in the matter of [D] and [E] v. [Respondents], Claim no. [   ].

(28) Respondents were served with the complaint on or about February 18, 1989.

(29) Respondents finally received verification that the three checks had been received on March 10, 1989.

(30) On March 10, 1989, respondents sent a check to [D and E's] lawyer in the amount of $1,167 in full settlement of the dispute.

(31) The Rules of Professional Conduct apply to respondents' activities. We find that respondents did not violate these rules.

## DISCUSSION

The hearing panel finds that, even though there was no attorney-client relationship between [E] and respondents, an attorney is still bound to comply with the Rules of Professional Conduct. Respondents have been charged with violating Rule 1.15(b) of the Rules of Professional Conduct, which provides:

"Upon receiving funds or other property in which a client or a third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with a client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding said property."

There is no dispute that respondents notified [E] after he became aware that two checks had been received by his agent. This occurred during a telephone conversation between [E] and respondent [1] sometime around December 14, 1988. Though respondent [1] was aware that his agent had received two checks, it is clear that there was a dispute as to the amount which [E] was claiming was due and owing by respondent [1] and the amount which [respondent 1] believed he owed to [E].

This is not a case in which an attorney is improperly withholding or misusing funds of a client. It is clear that there was never any attorney-client relationship between the respondents and [D] and [E]. It

632

is also clear that there had been disputes concerning the physical condition of the premises which the respondents sold to [D] and [E], and additional disputes during the closing on the property.

Since there was a third dispute as to the amount which [D] and [E] were contending respondents were holding, this hearing committee believes it was prudent for respondent [1] to withhold issuing any sums of money to [D] and [E] until he had received verification, either from [D] and [E] or his own agent, as to the actual amount the respondents were holding on behalf of [D] and [E]. On the date that respondents received verification of the amount of the funds that were mistakenly paid to the respondents, the respondents immediately paid [D] and [E] that amount. Since the amount of the sums held by respondents was in dispute up to March 10, 1989, we find that Rule 1.15(b) of the Rules of Professional Conduct was not violated.

## CONCLUSIONS OF LAW

The conduct of respondents did not amount to any violation of the Rules of Professional Conduct.

## RECOMMENDED DISPOSITION OF THE PETITION

The hearing panel unanimously recommends that the petition be dismissed.

## ORDER

And now, April 10, 1991, upon consideration of the report and recommendation of Hearing Committee [    ] filed February 21, 1991; it is hereby ordered

that the charges against [respondents], docketed at no. 53 and 54 D.B. 90, be dismissed.

Messrs. Gilardi, Gilbert and Schiller recused themselves.